UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WENONAH PARKER, | No. 1:20-cv-00601-GSA |
| Plaintiff, | |
| v. | **ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |
| KILOLO KIJAKAZI, acting Commissioner of Social Security, | |
| Defendant. | **(Doc. 25, 28)** |

## I.      Introduction

Plaintiff Wenonah Parker ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act.  The matter is before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1]  *See* Docs. 25, 28, 33.  After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision.  Plaintiff's appeal is therefore denied.

## II.      Factual and Procedural Background[2]

On April 14, 2016 Plaintiff applied for benefits alleging disability due mental illness and delusional disorder persecutory somatic.  AR 1844.  The Commissioner denied the applications initially on February 10, 2017 and on reconsideration on June 21, 2017.  AR 1757, 1767.

Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on February 13, 2019.  AR 1710–39.  On March 11, 2019 the ALJ issued a decision denying Plaintiff's application.  AR 26–42.  The Appeals Council denied review on March 31, 2020.  AR

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  *See* Docs. 9 and 11.

[2] The Court has reviewed the administrative record including the medical, opinion and testimonial evidence, about which the parties are well informed.  Relevant portions thereof will be referenced in the course of the analysis below when relevant to the arguments raised by the parties.

1–7.  On April 28, 2020 Plaintiff filed a complaint in this Court.  Doc. 1.

### III.    The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.   "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole."  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).  When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-

2

(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff  bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy, given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

## IV.    The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date of April 14, 2016.  AR 31.  At step two the ALJ found that Plaintiff had the following severe impairments: delusional disorder, somatic and persecutory type, amphetamine and alcohol use disorders.  AR 32.  The ALJ also determined at step two that Plaintiff's obesity was non-severe.  AR 32–33.  At step three the ALJ concluded as follows: 1) that Plaintiff's substance use disorder did meet listing 12.03; 2) that if Plaintiff stopped the substance abuse, the remaining impairments would still be severe but that those impairment or combination thereof would not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 32–34.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that, if Plaintiff stopped substance use she would have the RFC to perform the full range of work at all exertional levels with only one non-exertional limitation, namely limited public contact.  AR 34–37.  At step four the ALJ concluded that, if Plaintiff stopped substance use, she would be able to perform her past relevant work as an office clerk.  AR 37.

Accordingly, the ALJ concluded that Plaintiff's substance use disorder was a contributing

3

factor material to the determination of disability, that Plaintiff would not be disabled if she stopped the substance use, and that Plaintiff therefore was not disabled within the meaning of the Social Security Act at any time since her application date of April 14, 2016.  AR 37–38.

### V.      Issues Presented

Plaintiff asserts three claims of error: 1) that the Agency erred in failing to find that the records submitted to the Appeals Council directly contradict the ALJ's findings and might change the outcome of the administrative hearing; 2) that the ALJ erred in failing to develop the record with an assessment of Plaintiff's limitations from a treating or examining source, improperly relying on his own lay interpretation of medical data; and 3) that the ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations, and failed to offer clear and convincing reasons for discounting Plaintiff's subjective complaints.

### A.      Records Submitted to the Appeal's Council

#### 1.      Applicable Law

The Social Security Act grants district courts jurisdiction to review only final decisions of the Commissioner.  42 U.S.C. § 405(g); *Klemm v. Astrue*, 543 F.3d 1139, 1144 (9th Cir. 2008).  An Appeals Council denial of a request for review is a non-final agency action not subject to judicial review because when review is denied, the ALJ's decision becomes the final decision of the Commissioner.  *Taylor v. Commissioner of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011).

No later than five business days before the date of the hearing, a claimant must submit all written evidence to the administrative law judge who will conduct the hearing in the claimant's case.  20 C.F.R. § 416.1435(a).  The ALJ may also accept information after the five-day deadline prior to issuing the hearing decision under circumstances enumerated in 20 C.F.R. § 416.1435(b).

In limited circumstances, a claimant may submit new and material evidence to the Appeals Council that relates to the period on or before the ALJ's decision.  *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012); 20 C.F.R. § 416.1470(a)(5).  Evidence is material if

it bears "directly and substantially on the matter in dispute," and there is a "reasonable possibility"
that the new evidence would have changed the outcome. *Tudor v. Saul*, 484 F. Supp. 3d 717, 726
(N.D. Cal. 2020) (citing *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001)).

### 2.    <u>Analysis</u>

The following pertinent evidence was before the ALJ at the time of the decision.  Plaintiff
was committed to the Department of Mental Health from November 17, 2000 through April 12,
2006 in connection with a firearms offense, prior to which she abused methamphetamine and
suffered from delusions. AR 1955, 1969–71. Following her release to outpatient treatment in 2006,
her delusions returned, she tested positive for alcohol, and she was committed again from July 6,
2009 through April 4, 2016 to receive treatment for delusions and substance abuse. *Id.* At the time
of her release on April 4, 2016 she was noted not to be delusional or paranoid, and her insight and
judgment were fair. Ar. 1955–56, 2014–19.  She was continued on Invega for delusions and her
mental status examinations through December 2018 noted no delusional thinking.  AR 1958–60,
1987–94; 2002.

Plaintiff contends that she submitted extensive records to the Appeals Council which
directly contradict the ALJ's conclusion that Plaintiff's marked limitations in functioning were
attributable to her substance abuse.  Specifically, Plaintiff underscores voluminous records from
Patton Hospital which, in Plaintiff's view, "show that *in 2014 and 2015*, despite several years of
abstinence from substance abuse, she continued to suffered delusions . . . was often found to lack
insight into the nature of her illness . . . was observed to have impaired insight and judgment,
irritability, and hallucinations and delusions . . ."  Br. at  8, Doc. 25 (emphasis added) (citing AR
67, 78, 86, 90, 97, 117, 139, 237–38, 253–54, 286–87, 313–14, 336, 365-66, 405, 446, 466–67,
502, 516–17, 539–40, 567, 578, 582–92, 1526, 1694, 1709).

Defendant disputes the relevance of those records as they did not fall within the relevant

period.  Indeed, unlike disability insurance benefits, supplemental security income benefits are not retroactive to the date of disability onset, but are payable from the date of the application.  20 C.F.R. §§ 416.335.  Accordingly, claimants must establish disability within the relevant period, namely from the date of the application through the date of the ALJ's decision.  *See Koster v. Comm'r of Soc. Sec.*, 643 F. App'x 466, 478 (6th Cir. 2016); *Hoagland v. Colvin*, No. 1:12-CV-00973-SMS, 2013 WL 4402740, at *11 (E.D. Cal. Aug. 15, 2013).  Here, the relevant period was April 14, 2016 (the SSI application date) through March 11, 2019 (the date of the ALJ's decision).

Although records pre-dating the relevant period can have some relevance to a disability determination, the records from Patton Hospital do not speak directly or substantially on the issue at bar.  *See Robert M. v. Saul,* No. CV 18-6380-KS, 2019 WL 8163478, at *3 (C.D. Cal. Dec. 9, 2019) (citing *Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1165 (9th Cir. 2008)).  The fact that Plaintiff continued experiencing delusions while institutionalized in 2014 and 2015, notwithstanding a period of sobriety, does not speak directly or substantially to her mental functionality during the relevant period.  Plaintiff is correct that the records submitted to the Appeals Council establish that her delusions and substance abuse did not always go hand in hand. That is not a dispositive fact, however.  The ALJ did not make a finding that Plaintiff had never suffered delusions while sober, or that she would never do so in the future.  Rather, the ALJ's determination was based on Plaintiff's sobriety and mental functioning during the relevant period after she was released from inpatient care.

Additionally, Plaintiff underscores a February 2019 annual progress report completed by social workers Parkinson and Carano in connection with Plaintiff's conditional release program. The report confirms that Plaintiff did not test positive for any alcohol or illegal substances since her discharge from the hospital.  AR 56.  She was compliant with treatment, which included therapy twice monthly, group therapy twice monthly, home visits one per month, collateral contacts, bi-

monthly meetings with a psychiatrist, substance abuse screening, and AA meetings. AR 56–57.

Plaintiff contends the report establishes continued delusions despite sobriety in that the social worker's notes reflect Plaintiff "continues reporting delusions about her body that occurred around the time she committed her instant offense." AR 60. The report further notes that Plaintiff continued to assert that she was the victim of "botched surgery" that ruined her life and ruined her relationships with her daughters, she showed very poor insight and blamed the physician for her behavior, and she was unable to take responsibility for her actions and behaviors. AR 59. She lacked insight into the factors that made her past behavior and criminal offense dangerous, and did not understand that she could become violent or dangerous despite having no violent intent. AR 59. The social workers who completed the report also found that Plaintiff's borderline personality disorder symptoms continued to interfere with functioning. AR 59–60.

Despite the reference to continued delusions in the February 2019 progress report, Defendant contends Plaintiff's presentation in February 2019 contrasted with her presentation when she was institutionalized in 2009. In 2009, she reported that she believed her surgeon intentionally injured her, that she was dying and had a short time to live, that her surgeon was also harming other women-- the same delusions which initially caused her to engage in the violent behavior resulting in her institutionalization. AR 1970. In contrast, the February 2019 progress report reflected that Plaintiff accepted there was no way to repair the damage to her body and that obsessing over her botched surgery may trigger her symptoms. AR 59.

In sum, the progress report contains a single reference to non-specific "continued report[ed] delusions about her body that occurred around the time she committed her instant offense." The progress report reflects additional information, including that Plaintiff continued to demonstrate a lack of insight into her own responsibility for her behavior, and a lack of insight into the factors the caused her to become violent. The report also underscored the importance of her continued sobriety

7

and continued mental health treatment to prevent further violent episodes.  These were valid concerns the social worker reported to the Superior Court judge overseeing Plaintiff's conditional release program, but those concerns shed no light on the nature of the delusions referenced earlier in the report, or the extent to which those delusions might undermine Plaintiff's ability to meet the mental demands of competitive employment.

Importantly, the 2019 progress report does not reflect that the delusions referenced were of the same type or severity as she experienced when she was institutionalized.  Indeed, she remained on conditional release despite the progress report referencing that Plaintiff reported delusions.  Moreover, one isolated reference to non-specific delusions in an 11-page progress report does not present a reasonable possibility that the disability determination would have changed had the ALJ considered the progress report.  This is particularly true against a backdrop of 2-3 years' worth of mental status examinations the ALJ considered from April 2016 through December 2018, which uniformly documented no delusions.  AR 1955-60; 1987–94; 2002; 2014–19.

## B.  Failure to Develop the Record

### 1.  Applicable Law

The ALJ's duty to further develop the record is triggered where the evidence is ambiguous or inadequate to allow for proper evaluation.  *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001); *Tonapetyan*, 242 F.3d at 1150.  A specific finding of ambiguity or inadequacy in the record is not required to trigger the necessity to further develop the record where the record itself establishes the ambiguity or inadequacy.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011); *Garcia v. Comm'r of Soc. Sec.*, No. 1:19-CV-00545-SAB, 2020 WL 1904826, at *13 (E.D. Cal. Apr. 17, 2020).

### 2.  Analysis

Plaintiff contends that the ALJ was required to develop the record with an opinion from a

treating or examining source to determine the nature and extent of her mental functional limitations. It appears Plaintiff's argument may be two-fold: 1) that a treating or examining opinion is required in every case, and 2) that it was required in this particular case because the ALJ's RFC was unsupported by the non-examining opinions.  Neither contention is correct.

Although Plaintiff cites dicta from unpublished cases suggesting that an ALJ may not formulate an RFC without referencing a treating or examining opinion, such cases do not purport to establish (nor would they be controlling if they did) a rule of general applicability that an ALJ must obtain an examining opinion in every case before rendering an RFC determination.  Br. at 10 (citing *Shipp v. Colvin*, No. CV 13-9468 JC, 2014 WL 4829035, at *7 (C.D. Cal. Sept. 26, 2014) (collecting cases).  Such a rule would tend to contravene established circuit precedent that the RFC need not mirror any particular opinion, and would directly contravene the regulations that provide that the agency *may* obtain a consultative examination to resolve evidentiary ambiguity or insufficiency, not that an ALJ must do so in every case.  *See* 20 C.F.R. § 404.1519a; *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989); *Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010).

While it is undoubtedly true that an ALJ may not render an RFC determination without the aid of a *medical* opinion, the record does contain a medical opinion, namely the opinions of the non-examining state agency consultants (Drs. McWilliams, and Campbell) who reviewed Plaintiff's medical file at the initial and reconsideration levels-- as the agency's medical consultants do in each case.  Plaintiff nevertheless argues that the ALJ impermissibly reached an independent RFC unsupported by the non-examining doctors after rejecting their opinions.  Plaintiff's argument is rhetorically persuasive but ultimately unavailing.

The ALJ's RFC was supported by the non-examining consultants, who opined that she had mild limitations in concentration, persistence and pace, no other mental limitations, and that her

mental impairments were therefore non-severe.  AR 1744, 1753.  The ALJ rejected these opinions, finding that Plaintiff's mental impairments were indeed severe and ultimately disabling, but that substance abuse was a contributing factor rendering her not disabled within the meaning of the Social Security Act.  AR 36.  The fact that the ALJ's determination was *more* favorable to Plaintiff, though ultimately resulted in a finding of non-disability, does not render the ALJ's decision unsupported by the non-examining doctors.  Indeed, had the ALJ adopted the non-examining opinions verbatim, Plaintiff's claim would have been denied at step two.

Moreover, even assuming the ALJ's determinations at steps three or four involved some level of independent clinical evidence review beyond what was performed by the non-examining doctors (whose analysis stopped at step two), the ALJ did not usurp the role of a medical professional.  This case is far afield from the typical cases addressing this issue which often speak of an ALJ impermissibly interpreting "raw medical data" such as complex imaging and laboratory testing results.  *See, e.g.*, *Nguyen v. Chater*, 172 F.3d 31, 35 (1ˢᵗ Cir. 1999) (ALJ formulated claimant's residual functional capacity based on magnetic resonance images without the benefit of any medical opinion about the functional limitations attributable to the impairments depicted in the images); *Goodman v. Berryhill*, No. 2:17-CV-01228 CKD, 2019  WL 79016, at *5 (E.D. Cal. Jan. 2, 2019) (finding that the ALJ erred in adopting state agency consultants' opinions which were rendered before "plaintiff sustained a fall in November 2014" and before "an April 2015 MRI of the lumbar spine [which] showed L1 compression deformity with worsened kyphosis . . .").

Here, by contrast, the ALJ's RFC determination largely involved canvassing the records concerning Plaintiff's mental health impairments (largely the same records reviewed by the non-examining doctors), and noting the presence of disabling symptoms during periods of substance abuse, and the absence thereof during periods of sobriety.  That is not to say that an ALJ is necessarily qualified to independently translate all mental health treatment records into functional

terms.  *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (ALJ erred in rejecting medical opinion based on the ALJ's belief that claimant's attempts to operate a small business were inconsistent with a diagnosis of major depression).  Rather, Plaintiff's argument simply required more development here.

Plaintiff does not identify which records she contends were unsusceptible to a lay understanding or why.  Rather, Plaintiff's argument is predicated on the incorrect assumption that, as a matter of law, an ALJ is unqualified to independently interpret any medical records post-dating the agency physicians' review.  Practically speaking, the very nature of the administrative review process unavoidably results in a gap in time (often a lengthy one) between the agency physicians' reviews and the ALJ's hearing decision.  During that gap in time, claimants routinely continue their course of treatment for their conditions, generating new records.   Accepting Plaintiff's argument would mean that ALJ is always precluded from reviewing such records and must obtain a consultative examination in essentially every case.  As explained above, there is no such legal requirement absent evidentiary ambiguity or the presence of pertinent medical records unsusceptible to lay understanding.  Because Plaintiff does not establish that these criteria were met here, there is no basis to find that the ALJ erred in failing to further develop the record with an examining opinion.

### C.      Plaintiff's Subjective Symptomology

#### 1.      Applicable Law

The ALJ is responsible for determining credibility,[3] resolving conflicts in medical testimony and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  A

---

[3] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016.  Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities."  S.S.R. 16-3p at 1-2.

claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental

impairment or disability.  42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding

subjective pain or symptoms is credible.  *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir.

2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3.  First, the claimant must produce objective

medical evidence of an impairment that could reasonably be expected to produce some degree of

the symptom or pain alleged.  *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82.  If the

claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the

intensity and persistence of [the claimant's] symptoms to determine the extent to which the

symptoms limit an individual's ability to perform work-related activities."  S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and

convincing reasons.  *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p

at *10.  Subjective pain testimony "cannot be rejected on the sole ground that it is not fully

corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in

determining the severity of claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261

F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ must examine the record as a whole, including objective medical evidence; the

claimant's representations of the intensity, persistence and limiting effects of his symptoms;

statements and other information from medical providers and other third parties; and any other

relevant evidence included in the individual's administrative record.  S.S.R. 16-3p at 5.

### 2.   <u>Analysis</u>

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably

be expected to cause the alleged symptoms and found no malingering.  AR 35.  Thus, the ALJ was

required to articulate clear and convincing reasons before rejecting Plaintiff's reported symptoms.

1    *Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017).

2
3        The ALJ summarized Plaintiff's relevant testimony, including that she often becomes

4    overwhelmed, decompensates, becomes fixated on her health and thinks she will die, cannot focus

5    on achieving her treatment needs, does not get out of bed, has trouble completing tasks,

6    concentrating, getting along with others and finishing what she started.  AR 35.

7        The ALJ found Plaintiff's symptoms inconsistent with the objective medical record which

8    documented unremarkable mental status examinations during the relevant period during which time

9    Plaintiff was sober.  AR 36.  Plaintiff does not dispute the accuracy of the ALJ's description of the

10   mental status examinations during the relevant period other than to the extent she contends the

11   additional records submitted to the appeals council paint a different picture (an argument which is

12   unavailing for the reasons explained above).  Although subjective testimony "cannot be rejected on

13   the sole ground that it is not fully corroborated by objective medical evidence," the medical

14   evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling

15   effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R.

16   § 404.1529(c)(2)).

17
18       The ALJ also discounted Plaintiff's reported symptoms based on her reported daily

19   activities, including that she performs her personal care, goes grocery shopping once per month,

20   plays guitar, cooks, and does laundry.  AR 36.  Although Plaintiff accurately observes that these

21   activities neither establish an exceptionally high level of functionality nor establish her ability to

22   sustain gainful employment, they did reasonably establish that her symptoms were not as disabling

23   as alleged.  *See Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009)

24   (finding the ALJ satisfied the "clear and convincing" standard for an adverse credibility

25   determination where claimant engaged in "gardening and community activities . . . evidence

26   [which] did not suggest Valentine could return to his old job," but "did suggest that Valentine's

27
28

13

later claims about the severity of his limitations were exaggerated.").

**VI.   Conclusion and Order**

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.  Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied.  The Clerk of Court is directed to enter judgment in favor of Defendant Kilolo Kijakazi, Commissioner of Social Security, and against Plaintiff Wenonah Parker.

IT IS SO ORDERED.

Dated:   **November 4, 2021**                    **/s/ Gary S. Austin**
                                         UNITED STATES MAGISTRATE JUDGE

14